MoIlvaine, J.
The controlling facts in this case were so clearly proved by the testimony, all of which is set out in the record, that the principal question before us is, whether or not the verdict was contrary to law.
The facts may be stated thus: Previous to the year 1853, the Columbus and Xenia Railroad was constructed, from east to west, through plaintiff’s farm, and, within its limits, across the Little Miami river on a wooden bridge, and on each side of the road a fence had been built by the plaintiff. On the 8th of November, 1853, that company and the plaintiff entered into the following agreement in writing, to wit:
“ In consideration of $141.87 paid me by the Columbus and Xenia Railroad Co. for one-half of the division-fence built by me along the line of the said road through my land, I bind myself and assigns to keep up forever one-half of said division fence; the said company to have the right to select which side they will take in the above purchase. The other side to be kept up by me as aforesaid. I also bind myself to make a satisfactory conveyance of the right-of-way one hundred feet wide through my said land, which lies west of South Charleston in Clarke county, adjoining Webster’s land on the west.”
“Nov. 8, 1853
[Signed] “ Daniel O. Heiskell.”
*670 By this agreement, and the selection thereunder, the plaintiff became bound to maintain the fence on the south side of the road, and the company, the fence on the north side. Such was the relation of the parties when the Columbus and Xenia company leased its road to the defendant, and the same relation between the plaintiff and defendant was afterwards recognized and acted upon without question or interference in any manner until the year 1863, when defendant reconstructed the bridge over the river, by substituting iron for wood, and in so doing, for convenience sake, removed about eighty feet of plaintiff’s rail fence on the south side of the road, including the part extending across the river. After the rebuilding was completed, the defendant, instead of restoring the portion of the rail fence which had been removed, constructed wing fences of posts and boards from the abutments of the bridge, on each side of the river, to the contiguous ends of the rail fence, thus completing the separation of the defendant’s track from the adjacent pasture lands of the plaintiff, by a good and sufficient fence. This change and substitution by the defendant was acquiesced in and adopted by the plaintiff, by the construction of flood gates across the river between the abutments, thus completing a continuous line enclosing his pasture lands on the south side of the road.
These wing fences, without any further express agreement between the parties, continued to be used as parts of the division fence between the railroad and the plaintiff’s lands, until the happening of the grievances herein complained of on the 25th of April, 1875. During this period these wings had been repaired on several occasions by the defendant, and on one or more occasions by the plaintiff. On the 25th of April, 1875, the wing fence on the west side of the river was insufficient for want of repairs, for the purpose of turning stock, a fact then known to the plaintiff, by reason whereof tbe plaintiff’s stock escaped from the adjoining pasture and went upon the railroad track, where they were killed by passing trains.
The testimony does not show any negligence on the part of the defendant in the management of the trains at the time of *671 the injury; but, rather, that they were being run with ordinary aud reasonable care.
Upon the foregoing state of facts, we think the verdict should have been for the defendant, and on the trial below tile court charged the jury to the same effect.
There is no room for dispute, that, as between these parties, previous to the year 1863, the plaintiff was bound to maintain and keep in repair the entire line of fence on the south side of the railroad, so far as the same was located through his lands.
We concede, that in 1863, when the railroad company removed a part of this line near the river, for its own convenience in rebuilding the bridge, the plaintiff was thereby released from its duty to the defendant in respect to the portion of fence so removed, until the same was restored by the defendant. But when restored the conventional rights and duties of the parties again attached.
It is claimed, however, that the part of the fence removed, was not restored. Strictly, this claim is true. The rail fence was not rebuilt, nor was any substitute placed on the same site. But a post and board fence was constructed from the abutments of the bridge and connected with the ends of the rail fence which had not been removed, as a substitute for the part removed. True, the plaintiff might have objected to the substitute ; but he did not. On the other hand, he accepted it and adopted it as a part of the division line of fence between the parties. By so doing, we think, the duty to keep the substituted part in repair attached to the plaintiff under the former convention of the parties. Such was the instruction given to the jury by the court below, and we can see no error in it. But, if there were doubt on this point, it is perfectly clear, that by the use and adoption of this new line by the plaintiff as a means of inclosing his adjacent fields, the same became a division fence between the parties, and the duty of keeping it in repair devolved upon both parties; and each was guilty of negligence in' suffering it to be out of repair. Bences between railroads and other improved lands are put on the same footing with other partition fences (Act of 1859, § 3, S. & C. 332), and such partition fences are kept in repair by adjoining *672 owners (Act of 1840, § 2, S. & C. 649). So that in either view, the plaintiff, having failed to beep this fence in repair, and having permitted his stock to escape through the same, knowing it to be insufficient, whereby they were killed by passing trains, should not have recovered for the injury to which he thus contributed, without proof of negligence on the part of defendant in the management of its trains.
On the question of negligence in the management of the trains at the time the plaintiff’s stock was killed, in view of the ruling in Railroad Co. v. McMillen, 37 Ohio St. 554, we are clearly satisfied that the judgment in favor of the plaintiff cannot be sustained on this ground.

Judgment reversed and cause remanded.